Filed 6/2/25  P. v. Diaz CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JULIA RODRIGUEZ DIAZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B335366<br>(Super. Ct. No. SB126040)<br>(Santa Barbara County) |

Julia Rodriguez Diaz appeals from the order summarily denying her petition for resentencing (Pen. Code,[1] § 1172.6).  She contends she is eligible for an evidentiary hearing because the jury may have convicted her of first degree murder based on the natural and probable consequences doctrine.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 1979, Diaz was convicted by a jury of first degree murder (§ 187, subd. (a); count 3).  The jury found true an enhancement

---

[1] All undesignated statutory references are to the Penal Code.

that she personally used a deadly weapon (a hammer) in the commission of the murder (§ 12022, former subd. (b)).  She was also convicted of crimes against other victims committed prior to the date of the murder: assault with a deadly weapon (a hammer) (§ 245, former subd. (a); count 1) and attempted extortion (§ 524; count 2).  The trial court sentenced Diaz to life imprisonment for murder with concurrent sentences of four years for count 1 and three years for count 2.  The judgment was affirmed by the Court of Appeal, Second Appellate District, Division 1.  (*People v. Diaz* (Oct. 5, 1981, No. 36128) [nonpub. opn.].)

In 2023, Diaz filed a facially sufficient form petition for resentencing.  (§ 1172.6.)  Counsel was appointed.  (§ 1172.6, subd. (b)(3).)  The parties submitted briefs and a hearing was held.  (§ 1172.6, subd. (c).)

The trial court considered the abstract of judgment, minutes of the verdict and sentence, verdict forms, and jury instructions.  The court denied the petition because "the record of conviction establishes that Petitioner was the sole perpetrator and was not convicted based on [the] 'natural and probable consequences theory' or 'felony murder.' "

### Judicial notice

The Attorney General requests we take judicial notice of the clerk's transcript and reporter's transcript of the trial.  Diaz opposes the request.  Because we review de novo whether Diaz made a prima facie case for relief, we are not limited to the parts of the record of conviction considered by the trial court.  (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170; *People v. Lee* (2023) 95 Cal.App.5th 1164, 1174, 1187, fn. 10.)  We grant the request for judicial notice.  (Evid. Code, §§ 452, subd. (d)(2), 459, subd. (a); *Lee*, at p. 1187, fn. 10.)

*Trial evidence*

Seven-year-old Javier Angel was last seen alive on December 2, 1978, before 2:45 p.m., talking to Diaz at her apartment doorway and entering her apartment. At about 4:00 p.m., police took Diaz to the police station to interview her about extortion allegations. Javier was reported missing at 5:35 p.m.

Police brought Diaz back to her apartment at about 9:00 p.m. and searched her bedroom. She was in the room during the search along with M.Z., from whom she rented the room.

An officer found a dark plastic garbage bag under Diaz's bed. He asked what it was. Diaz and M.Z. said they did not know. Before police opened the bag, Diaz "began to cry and grab her stomach and bend over slightly at the waist."

Javier's body was inside the bag. An inner bag was tied tightly around his neck with a nylon cord. The cause of death was strangulation by ligature and suffocation from the plastic bag. Javier also had eight small lacerations on his head and bruises on the back of his head caused by a blunt instrument. The head injuries may have knocked him unconscious but did not cause his death.

Diaz told police she had been alone in the house. She said Javier knocked on the door but did not come in. Before Javier's body was removed from the bags and before police were aware of his head injuries, Diaz said, "I did not hit that boy."

Diaz said a delivery man she did not know had walked around inside her apartment while she was in the bathroom but she did not see what he did. She also said her son's father was at the apartment that day and she falsely told him that Javier, who was sitting on a chair in her room, was their son.

A hammer with dried human blood on it was found in

3

Diaz's apartment. Blood of Javier's blood type was found on the rug in Diaz's bedroom and on the pants Diaz had worn that day. A strand of hair consistent with Diaz was found on the back of Javier's shirt.

Javier had played with an eight-year-old boy the day of the murder. The boy testified that he saw a man inside Diaz's apartment when Diaz let Javier inside. He said he had seen the man in a distinctive van on previous occasions, and the van was in the driveway near the apartment when Javier entered the apartment.

*Jury instructions*

Diaz was arrested and tried for murder. The jury was instructed that persons are guilty of a crime if they "directly and actively commit . . . the crime," or "with knowledge of the unlawful purpose of the one who does directly and actively commit . . . the crime, aid and abet in its commission" or "advise and encourage its commission." The instruction added: "[One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged.]" (CALJIC No. 3.00 (1979 revision).)

The jury was also instructed: "The burden is on the State to prove beyond a reasonable doubt that the defendant is *the person who committed or aided and abetted* the commission of *the offense with which she is charged.* You must be satisfied beyond a reasonable doubt that the defendant was the person who committed the offense or aided and abetted the commission thereof before you may convict her." (Defendant's special instruction No. 6, italics added, some capitalization omitted.)

The court further instructed: "Murder of the first degree is any murder which is perpetrated by any kind of willful, deliberate and premediated killing with *express malice aforethought*. You will recall that malice is express when there is manifested an *intent to unlawfully kill a human being*." The instruction continued, "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the perpetrator to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree." (Court's instruction, italics added.)

Another jury instruction read in part: "[Y]ou may not find the defendant guilty of the offense of murder in the first degree unless the proved circumstances not only are consistent with the theory that *she* not only had *the specific intent to unlawfully kill a human being*, but also that such unlawful killing was accomplished by such assailant with malice aforethought and with willfulness, deliberation and premeditation, but cannot be reconciled with any other rational conclusion." (Italics added.)

Finally, the court instructed: "Whether some of the instructions will apply will depend upon your determination of the facts. You will disregard any instruction which applies to a state of facts which you determine does not exist." (CALJIC No. 17.31.)

### *Closing argument*

In closing argument to the jury, neither attorney mentioned natural and probable consequences or suggested that Diaz assisted or encouraged another person to commit another crime that led to Javier's death. The prosecution argued that

Diaz was alone in her apartment when she lured Javier inside and killed him.  The prosecution also argued there was "no reasonable, competent evidence that someone else" committed the crime.  The defense argued that Diaz was not the murderer because if she was, she would not have admitted to police that Javier had been in her apartment.  The defense suggested the delivery man, the father of Diaz's child, or the man with the van killed Javier while Diaz was in the bathroom or at the police station.

## DISCUSSION

### *Resentencing petitions*

Section 1172.6 provides for resentencing a murder conviction based on an accusatory pleading "that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," and "[t]he petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (a)(1) & (3).)

If the petition is facially sufficient, the parties have an opportunity to submit briefs, and the court "shall hold a hearing to determine whether the petitioner has made a prima facie case for relief."  (§ 1172.6, subd. (c).)  "[A] trial court can rely on the record of conviction in determining whether that . . . prima facie showing is made."  (*People v. Lewis* (2021) 11 Cal.5th 952, 970.)  The court may dismiss the petition " '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief.' "  (*People v. Curiel* (2023) 15 Cal.5th 433, 450.)  "[A] trial court should not engage in 'factfinding involving the

6

weighing of evidence or the exercise of discretion' " at the prima facie stage of section 1172.6 proceedings.  (*Lewis*, at p. 972.)

"We review de novo an order denying a section 1172.6 petition at the prima facie review stage."  (*People v. Flores*, *supra*, 96 Cal.App.5th at p. 1170.)  Thus, we must determine whether it is "reasonably likely" the jurors interpreted the jury instructions as a whole to impute malice to Diaz based on participation in another crime or on the mental state of an accomplice.  (*People v. Allen* (2023) 97 Cal.App.5th 389, 397; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1255–1256.)  As discussed below, we conclude Diaz is ineligible for resentencing because the jury found she was the actual killer and acted with intent to kill.

*Actual killer*

In Senate Bill No. 1437 (2017–2018 Reg. Sess.), which enacted the predecessor to section 1172.6,[2] "the Legislature found it 'necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is *not the actual killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' "  (*People v. Gentile* (2020) 10 Cal.5th 830, 846–847, italics added, abrogated by statute on another point as noted in *People v. Hin* (2025) 17 Cal.5th 401, 442.)  "[R]elief is unavailable if the defendant was either the actual killer, [or] acted with the intent to kill."  (*People v. Strong* (2022) 13 Cal.5th 698, 710.)

The aiding and abetting instruction here included a

---

[2] The provision was originally numbered as section 1170.95 and later renumbered as section 1172.6 effective 2022 without substantive change.

description of the natural and probable consequences doctrine. But the jury was also instructed that the prosecution must prove "the defendant is the person who committed or aided and abetted the commission of the offense with which she is charged," i.e., murder. Considering the instructions collectively, we conclude it was "not reasonably likely that jurors imputed malice" to Diaz. (*People v. Allen*, *supra*, 97 Cal.App.5th at p. 397; *People v. Williams*, *supra*, 86 Cal.App.5th at pp. 1255–1256.)

Diaz contends evidence that several men were in her apartment—the deliveryman, the father of her child, and the man with the van—supports the possibility that one of them was the actual killer and she was convicted on a theory of natural and probable consequences. But the prosecution's closing argument presented the jury with only one theory: that Diaz was the actual killer. (See *People v. Estrada* (2022) 77 Cal.App.5th 941, 948.) As in *Estrada*, no target offense for natural and probable consequences was identified. (*Ibid.*; see *People v. Prettyman* (1996) 14 Cal.4th 248, 254, superseded by statute as stated in *People v. Lopez* (2023) 88 Cal.App.5th 566, 575.) Diaz was charged with only one crime on December 2, 1978: murder.

Neither side suggested at trial that Diaz participated in a crime by another person that led to Javier's death. The defense argued that some other person committed the crime without Diaz's knowledge while she was in the bathroom or at the police station. Thus, the only scenarios presented to the jury were that Diaz was the actual killer, or was not involved at all. The jury accepted the prosecution theory. And the conclusion that Diaz was the actual killer was corroborated by the jury's finding that she personally used a hammer as a deadly weapon in the commission of the offense. (*People v. Patton* (2025) 17 Cal.5th

8

549, 563.)  Because there are no "specific facts" to establish that Diaz aided another killer, Diaz is not entitled to relief based on "mere latent, speculative possibilities."  (*Id*. at p. 567.)

*Actual malice*

Diaz is also ineligible for resentencing because the jury found she possessed the intent to kill.  (*People v. Strong*, *supra*, 13 Cal.5th at p. 710; *People v. Gentile*, *supra*, 10 Cal.5th at pp. 846–847.)  "By limiting murder liability to those principals who personally acted with malice aforethought, section 188 (a)(3) eliminates what was the core feature of natural and probable consequences murder liability: the absence of a requirement that the defendant personally possess malice aforethought."  (*Gentile*, at p. 849.)

A jury instruction regarding natural and probable consequences does not entitle a petitioner to section 1172.6 relief where "jurors would have had to conclude that [the defendant] harbored the intent to kill."  (*People v. Allen*, *supra*, 97 Cal.App.5th at p. 395; *People v. Williams*, *supra*, 86 Cal.App.5th at pp. 1253–1255.)  In *Allen*, direct aiding and abetting and conspiracy theories of liability precluded resentencing as a matter of law because both theories necessarily included the intent to kill.  (*Allen*, at p. 395.)  And in *Williams*, a special circumstance jury finding necessarily included an intent to kill. (*Williams*, at pp. 1254–1255.)  Similarly here, Diaz is not entitled to relief because the jury found she acted with intent to kill.  (*Id*. at p. 1256.)

The jury was instructed on only one theory of first degree murder: a "willful, deliberate and premediated killing with express malice aforethought," i.e., "an intent to unlawfully kill a human being."  To find "the defendant guilty of the offense of

9

murder in the first degree," the jury had to find that "she . . . had the specific intent to unlawfully kill a human being."  In our view, the jury finding that Diaz committed first degree murder precludes section 1172.6 relief.

*People v. Chiu* (2014) 59 Cal.4th 155, superseded by statute as stated in *People v. Lewis, supra*, 11 Cal.5th at p. 959, fn. 3, upon which Diaz relies, is not to the contrary.  The jury there was instructed that the defendant could be convicted of first degree murder if the perpetrator with whom the defendant participated acted with malice aforethought and premeditation and murder was the natural and probable consequence of a target offense. (*Id*. at pp. 160–161.)  Our Supreme Court held that an aider and abettor cannot be convicted of first degree murder based on the natural and probable consequences if only the actual "perpetrator acted willfully, deliberately, and with premeditation."  (*Id*. at p. 158.)  But in contrast here, the jury was instructed that it could find Diaz guilty of first degree murder only if "she . . . had the specific intent to unlawfully kill a human being."

Based on these instructions, we conclude "the jury necessarily found [Diaz] had acted willfully and with intent to kill, a finding incompatible with the natural and probable consequences theory." (*People v. Lee, supra*, 95 Cal.App.5th at p. 1189.)  Because the jury found Diaz guilty of first degree murder, "it necessarily found that [she] acted with intent to kill, not merely that murder was the natural and probable consequences of a nonhomicide crime [she] committed." (*People v. Estrada, supra*, 77 Cal.App.5th at pp. 945–946.)

*People v. Curiel, supra*, 15 Cal.5th 433, is not to the contrary.  There, it was undisputed that the defendant seeking resentencing was not the actual killer.  (*Id*. at p. 445.)  The

10

prosecution pursued direct aiding and abetting and natural and probable consequences theories of liability.  (*Ibid*.)  For the latter theory, target offenses of disturbing the peace and carrying a concealed firearm were identified.  (*Id*. at p. 466.)  The jury was instructed that the defendant need only intend to aid and abet a target offense, and need not intend to aid murder.  (*Id*. at p. 470.)  In contrast here, Diaz was the actual killer, the prosecution did not rely on the natural and probable consequences, and no target offenses were identified.

Nor is relief supported by *People v. Lopez* (2022) 78 Cal.App.5th 1, upon which Diaz relies.  The defendant there entered the victim's apartment with another man and one of them bludgeoned the victim.  (*Id*. at p. 19.)  The verdict did not specify whether Lopez's murder conviction was based on malice aforethought or felony murder in the perpetration of a robbery.  (*Id*. at p. 14.)  In contrast here, the jury found Diaz acted with the intent to kill.  This finding precludes section 1172.6 relief.

DISPOSITION

The trial court's order denying Diaz's petition for resentencing pursuant to Penal Code section 1172.6, entered February 20, 2024, is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.                    CODY, J.

11

Michael J. Carrozzo, Judge

Superior Court County of Santa Barbara

_____

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.